FILED
2020 Sep-23  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JACQUELINE SMITH WASHINGTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  4:19-cv-00462-MHH** |
| **v.** | } | |
| | } | |
| **ANDREW SAUL,** | } | |
| **Commissioner of the** | } | |
| **Social Security Administration,**[1] | } | |
| | } | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. § 405(g), plaintiff Jacqueline Smith Washington seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied her claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

---

[1] The Court asks the Clerk to please substitute Andrew Saul for Nancy A. Berryhill as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(d) (When a public officer ceases holding office, that "officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I. PROCEDURAL HISTORY

Ms. Washington applied for a period of disability and disability insurance benefits and supplemental security income.  (Doc. 4-3, p. 16).  She alleges that her disability began on October 6, 2015.  (Doc. 4-3, p. 16).  The Commissioner initially denied Ms. Washington's claims.  (Doc. 4-3, p. 16).

Ms. Washington requested a hearing before an Administrative Law Judge ("ALJ").  (Doc. 4-3, p. 16).  After the hearing, the ALJ issued an unfavorable decision.  (Doc. 4-3, pp. 16-26).  The Appeals Council declined Ms. Washington's request for review, making the Commissioner's decision final for this Court's judicial review.  (Doc. 4-3, p. 2).  *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's decision is supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Washington has not engaged in substantial gainful activity since October 6, 2015, the alleged onset date.   (Doc. 4-3, p. 18). The ALJ determined that Ms. Washington suffers from the following severe impairments:  degenerative disc disease and left shoulder bursitis.  (Doc. 4-3, p. 18). The ALJ determined that Ms. Washington suffers from the following non-severe impairments:  hypertension and affective disorder.  (Doc. 4-3, p. 19).  Based on a review of the medical evidence, the ALJ concluded that Ms. Washington does not have an impairment or a combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 4-3, p. 19).

In light of Ms. Washington's impairments, the ALJ evaluated Ms. Washington's residual functional capacity.   The ALJ determined that Ms. Washington had the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could occasionally climb ramps and stairs, stoop and crouch, but never ladders, ropes or scaffolds; nor should she kneel or crawl; she could only occasionally reach overhead with her bilateral upper extremities; she could frequently use her left upper extremity for handling and fingering; she can have only occasional exposure to vibration as well as extremes of cold; no exposure to hazards such as unprotected heights and dangerous machinery; and would be capable of performing simple, routine tasks.

(Doc. 4-3, p. 22).  "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Based on this RFC, the ALJ concluded that Ms. Washington could not perform her past relevant work as a pharmacy technician or material handler.  (Doc. 4-3, p. 24).  Ms. Washington was 46 years old when she applied for disability benefits.  A person who is that age "is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)."  (Doc. 4-3, p. 24). Relying on testimony from a vocational expert, the ALJ found that other jobs existed in the national economy that Ms. Washington could have performed, including bench and table worker, assembler, and surveillance system monitor.  (Doc. 4-3, p. 25). Accordingly, the ALJ determined that Ms. Washington was not under a disability within the meaning of the Social Security Act at any time from October 5, 2015, the alleged onset date, through May 15, 2018, the date of the ALJ's decision. (Doc. 4-3, p. 25).

# IV. ANALYSIS

Ms. Washington contends that she is entitled to relief from the ALJ's decision because the ALJ used an improper pain standard and failed to consider all of her severe impairments, and Ms. Washington also argues that the denial is not supported by substantial evidence. (Doc. 6, p. 1). The Court begins its analysis of these issues with a review of the ALJ's application of the pain standard. Then the Court considers whether the ALJ evaluated all severe impairments and whether there is substantial evidence to support the denial of benefits.

## A. Pain Standard

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Coley v. Comm'r, Soc. Sec. Admin.*, 771 Fed. Appx. 913, 918 (11th Cir. 2019). When relying upon subjective symptoms to establish disability, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptoms]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Chatham v. Comm'r, Soc. Sec. Admin.*, 746 Fed. Appx. 864, 868 (11th Cir. 2019) (citing *Wilson*).

If the ALJ does not apply the three-part standard properly, then reversal is appropriate. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 Fed. Appx. 935, 937 (11th Cir. 2017) (citing *Holt*).

A claimant's credible testimony coupled with medical evidence of an impairing condition "is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223*; see Gombash v. Comm'r, Soc. Sec. Admin.*, 566 Fed. Appx. 857, 859 (11th Cir. 2014) ("A claimant may establish that he has a disability 'through his own testimony of pain or other subjective symptoms.'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   If an ALJ rejects a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson,* 284 F.3d at 1225; *Coley*, 771 Fed. Appx. at 918.  As a matter of law, the Secretary must accept a claimant's testimony if the ALJ inadequately or improperly discredits the testimony.  *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Kalishek v. Comm'r, Soc. Sec. Admin.*, 470 Fed. Appx. 868, 871 (11th Cir. 2012) (citing *Cannon*); *see Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) ("It is established in this circuit if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.").

When credibility is at issue, the provisions of Social Security Regulation 16-3p apply.  SSR 16-3p provides:

> [W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4.  An ALJ must explain the basis for findings relating to a claimant's description of symptoms:

> [I]t is not sufficient . . . to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough . . . simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *10. In evaluating a claimant's reported symptoms, an ALJ must consider:

> (i) [the claimant's] daily activities; (ii) [t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms; (v)

[t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms; (vi) [a]ny measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Leiter v. Comm'r, Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010).

Ms. Washington argues that the ALJ improperly applied the pain standard by failing to consider whether her impairments are so severe that the very nature of the impairment could be expected to lead to her reported pain under the third prong of the pain standard. (Doc. 6, pp. 18-20). She argues that the ALJ did not fully consider whether Ms. Washington's diagnoses of degenerative disc disease and shoulder bursitis themselves could be expected to cause Ms. Washington pain and instead only determined that the objective medical evidence does not confirm the severity of Ms. Washington's pain under prong two of the pain standard. (Doc. 6, pp. 18-20).

Ms. Washington is correct; an ALJ should consider all three prongs of the pain standard to determine whether a claimant's pain is disabling, but an ALJ also must consider "'whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.'" *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (quoting Social Security

Ruling 16-3).  The ALJ must evaluate whether the statements regarding the limiting effects of pain are substantiated by objective medical evidence, and if they are not, the ALJ must consider other evidence in the record to determine how the symptoms limit the claimant's work-related activities.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

An incomplete analysis of the pain standard by the ALJ here would be harmless error because the evidence in the record does not support a finding that pain would prevent Ms. Washington from performing sedentary work, and Ms. Washington does not cite evidence to suggest that the ALJ's determination would have been different if the ALJ had considered the third prong of the pain standard. Ms. Washington's medical records indicate that she experienced pain in her shoulders, and she complained mostly about left shoulder pain.  Her physicians provided fairly conservative treatment for her shoulder pain, prescribing some pain medication in 2016 and 2017.  Ms. Washington also received a few injections for pain management.  A few of Ms. Washington's medical records mention fibromyalgia, and one medical record from 2017 states, under "social history," "Disabled due to fibromyalgia." (Doc. 4-11, p. 34).  But that record from Southern Cardiovascular Associates, P.C. concerns a visit for treatment of hypertension.  In the record, the treating certified nurse practitioner stated that Ms. Washington's chest pain might be caused by hypertension or fibromyalgia, and the CNP noted that

Ms. Washington saw a physician for treatment of her neck pain. (Doc. 4-11, pp. 33-36). While Ms. Washington's medical records indicate that, during the relevant time period, she suffered from chronic left shoulder pain, the substantial evidence in the record supports the conclusion that that pain would not prevent Ms. Washington, who is right-handed (Doc. 4-10, p. 74), from performing sedentary work.

The ALJ properly considered and discredited Ms. Washington's subjective complaints of pain. The ALJ determined that while Ms. Washington's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the medical record and other evidence were not consistent with Ms. Washington's statements regarding the intensity, persistence, and limiting effects of her pain. (Doc. 4-3, pp. 22-24). Substantial evidence from Ms. Washington's testimony and the medical record supports the ALJ's determination that Ms. Washington was not as limited by her pain as she asserts, and the ALJ properly explained her reasons for rejecting statements by Ms. Washington and discussed which evidence contradicted Ms. Washington's pain testimony.

### 1. Ms. Washington's Medical Records

Ms. Washington's medical records confirm that she has suffered from a history of musculoskeletal impairments throughout the disability period. On September 18, 2015, Ms. Washington was diagnosed with significant degenerative disk disease after undergoing a magnetic resonance imaging (MRI) procedure.

(Doc. 4-9, p. 50).  Following this diagnosis, Ms. Washington had surgery to replace her C-5-C6 disk on October 30, 2015.  (Doc. 4-9, p. 75).  Though initially thought to be a successful procedure, Ms. Washington's pain in her neck worsened after this procedure.  (Doc. 4-10, p. 6).  In January of 2016, Ms. Washington underwent a second procedure to correct hardware failure from the first surgery.  (Doc. 4-10, p. 34).  Ms. Washington reported to Dr. James Smith after the procedure that her neck was improving and that she no longer had arm pain.  (Doc. 4-10, pp. 43, 46, 49).  Dr. Smith remarked that he believed it would be unlikely that she would return to a labor-intensive job, and she "would be best suited for a sedentary job," including teaching.  (Doc. 4-10, p. 41).

In May of 2016, Ms. Washington reported having constant shoulder pain. (Doc. 4-10, pp. 61-62).  She had difficulty putting on clothes or holding items without dropping them.  (Doc. 4-10, pp. 61-62). Ms. Washington had full range of movement of various joints, was capable of walking, and could sit on the exam table without assistance, but Ms. Washington had limited range of movement with her left shoulder.  (Doc. 4-10, pp. 61-63).  Dr. Celtin Robertson determined that Ms. Washington had no limitation in sitting, standing, or manipulative activities except Ms. Washington could not "reach overhead or reach forward the left upper extremity."  (Doc. 4-10, p. 65).  Dr. Smith recommended physical therapy for Ms.

Washington's shoulder pain, but it did not improve her condition.  (Doc. 4-10, pp. 76, 83-84).

The medical records also indicate that Ms. Washington had a history of benign hypertensive heart disease since November 2013.  (Docs. 4-8—4-11).  Ms. Washington's medical records indicate that she has not suffered fainting or any other significant limitation resulting from her hypertension.  (Doc. 4-8, p. 11).  A transthoracic echocardiogram taken in October 2015 was normal.  (Doc. 4-11, p. 4).

### 2.  Ms. Washington's Testimony

In January 2016, Ms. Washington completed a disability report and a functional report.  (Doc. 4-7, pp. 2-5, 26-33).  On the disability report, Ms. Washington noted that she suffered from disc deterioration, cervical disc replacement and infusion, muscle spasms, high blood pressure, heart issues, and fibrocystic disease.  (Doc. 4-7, p. 14).  Ms. Washington reported on her functional report that she was experiencing "constant pain in the neck, back and shoulders." (Doc. 4-7, p. 26).  She reported that she could brush her hair, shave her legs, and prepare meals every day.  (Doc. 4-7, pp. 27-28).  Ms. Washington could manage her own finances.  (Doc. 4-7, p. 29).  She reported that her illnesses affected her memory and ability to walk such that "walking a certain distance cause [her] to become dizzy."  (Doc. 4-7, p. 31).  She also reported "numbness in her hands."  (Doc. 4-7, p. 31).

In the hearing before the ALJ on January 23, 2018, Ms. Washington described her surgeries in October 2015 and January 2016 as treatment for disc degeneration. (Doc. 4-3, p. 46).  Ms. Washington testified that despite these surgeries, her pain continued, and she developed shoulder pain and had "plenty [of] injections" in her left shoulder to help alleviate pain.  (Doc. 4-3, p. 46).  Ms. Washington rated her pain without medication at "about an eight" out of ten and a "about a six" after taking medication.   (Doc. 4-3, p. 50).   Ms. Washington was unable to seek pain management because she did not have insurance.  (Doc. 4-3, pp. 52-54).

Ms. Washington also testified to the limiting effects that her symptoms had on her daily life.  She stated that she would attempt to do household chores, but it hurt her, and she had to have her grandson help her do laundry.  (Doc. 4-3, p. 49). For "most of the day," Ms. Washington would sleep for approximately two to three hours at a time, and she suffered drowsiness because of her medications.  (Doc. 4-3, pp. 46, 51).  Ms. Washington could prepare a meal in the microwave.  (Doc. 4-3, p. 46).  Occasionally, she would attend church, grocery shop, drive less than a mile to her doctor's appointments, or ride with her daughter back to home in Mississippi. (Doc. 4-3, pp. 47-48, 52).

*3.  The ALJ's determination*

The ALJ discounted Ms. Washington's testimony concerning the limitations she experienced because her impairments, citing specific evidence in Ms. Washington's medical records to discount her statements.  (Doc. 4-3, pp. 22-24). Pointing to Dr. Smith's long treatment history of Ms. Washington's degenerative disc disease and shoulder pain, the ALJ noted that Ms. Washington seemed to experience less pain following her two surgeries and that her shoulder pain resulted in limited range of motion but did not otherwise prevent Ms. Washington from engaging in daily activities.  (Doc. 4-3, p. 23).  The ALJ also discussed Dr. Robertson's physical examination of Ms. Washington and gave some weight to the doctor's finding that Ms. Washington had full range of motion except limitations in her left shoulder movement because that finding was "generally consistent with medical records and the claimant's daily activities." (Doc. 4-3, pp. 23-24).  The ALJ explained that the x-rays of Ms. Washington's left shoulder "showed no radiographic abnormality."  (Doc. 4-3, p. 24).  These determinations are consistent with Ms. Washington's testimony that she could do some activity like walking for a short distance, going grocery shopping, or tending to her personal hygiene without assistance.

Ultimately, on this record, substantial evidence supports the ALJ's decision to partially discredit Ms. Washington's statements regarding the limitations that she

attributes to pain.  *See Markuske v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 762, 767 (11th Cir. 2014) ("The objective medical evidence cited by the ALJ provided 'adequate reasons' for her decision to partially discredit Markuske's subjective complaints [of back, neck, elbow, and carpal tunnel syndrome pain].").  The ALJ did not ignore Ms. Washington's complaints of pain; the ALJ weighed that information in arriving at Ms. Washington's RFC.  Therefore, the ALJ did not commit error in applying the pain standard.

**B. The ALJ's Consideration of All Severe Impairments**

The ALJ properly considered all severe impairments.  At the second stage of the sequential evaluation, the ALJ must only determine whether the claimant suffers from "*any* severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   "A severe impairment is one that significantly limits the claimant's ability to do basic work activities." *Heatly v. Comm'r of Soc. Sec.*, 2010 WL 2331416, at *1 (11th Cir. June 11, 2010).

Here, the ALJ determined that Ms. Washington suffers from degenerative disc disease and left shoulder bursitis.  (Doc. 4-3, p. 18).  As discussed in the summary above, there is substantial evidence to support this finding.  Ms. Washington alleges that the ALJ failed to consider her impairment of rheumatoid arthritis and the effect rheumatoid arthritis on her ability to function.  (Doc. 6, pp. 20-22).

Under the Social Security Amendments Act of 1954, claimants have the burden of showing that they have medical condition that constitutes a severe impairment.  42 U.S.C.A. § 423 ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  Claimants may show such an impairment through "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.

In support of her argument, Ms. Washington cites several records from the Etowah Free Community Clinic that summarily state that Ms. Washington has rheumatoid arthritis.  (Doc. 4-3, pp. 34, 37-38).  These records contain no details concerning the diagnosis, and the records indicate only that Ms. Washington generally suffers from pain.[2]  The records do not indicate that arthritis significantly limits Ms. Washington's ability to perform work-related activities.  Ms. Washington

---

[2] Several medical records suggest that Ms. Washington's chronic pain is a result of fibromyalgia instead of rheumatoid arthritis.  (Doc. 4-10, p. 83; Doc. 4-11, pp. 10, 13, 20). The ALJ discussed her findings that Ms. Washington's alleged fibromyalgia was not "a medically determinable impairment." (Doc. 4-3, p. 20). Using Social Security Ruling 12-2p section II (A) based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, the ALJ determined that Ms. Washington's medical records did not have enough evidence supporting a diagnosis of fibromyalgia.  (Doc. 4-3, p. 21). The ALJ noted that Ms. Washington's medical records demonstrate a history of chronic pain, but there was no evidence of pain in all quadrants of the body or at least 11 positive tender points, as required by the diagnosing criteria.  (Doc. 4-3, p. 21). Therefore, the ALJ determined that Ms. Washington's fibromyalgia was not severe under Social Security guidelines, and there is no evidence before the Court to contradict that finding.

has therefore not carried her burden of proving that her diagnosis of rheumatoid arthritis should have been considered a severe impairment.

Regardless of how the ALJ weighed Ms. Washington's rheumatoid arthritis at Step Two of the framework, the ALJ properly considered all of Ms. Washington's conditions irrespective of severity when determining her RFC.  (Doc. 4-3, pp. 17-18).  The ALJ specifically said that she had "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence" as part of her RFC determination.  (Doc. 4-3, p. 22).  The Court is satisfied that the ALJ considered the symptoms consistent with Ms. Washington's rheumatoid arthritis in coming to her conclusion that Ms. Washington can perform sedentary work.

## C. Substantial Evidence

Ms. Washington argues that the Appeals Council erred in failing to consider additional evidence she had submitted.  (Doc. 6, p. 22).  In addition, Ms. Washington argues that ALJ erred in relying on the Vocational Expert's ("VE") testimony because the testimony was "not based on a correct or full statement of the claimant's limitations or impairments."  (Doc. 6, pp. 23-25).  The Court is not persuaded by either argument.

*1. The Appeals Council Was Not Required to Consider New Evidence*

At each stage of the administrative process, a claimant frequently is allowed to introduce new evidence to support her claim. *See* 20 C.F.R. § 404.900(b); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F. 3d at 1261 (quoting 20 C.F.R. § 404.970(b)). If the Appeals Council erroneously fails to consider new evidence, a district court must remand. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

Evidence must be both material and timely to be considered by the Appeals Council. "Evidence is chronologically relevant if it 'relates to the period on or before the date' of the ALJ's decision." *Banks v. Comm'r, Soc. Sec. Admin.*, 686 Fed. Appx. 706, 709 (11th Cir. 2017) (quoting 20 C.F.R. § 416.1476(b)(1)). "Even records that postdate the ALJ's decision may be chronologically relevant when the records assess conditions existing prior to the decision, the physician evaluated medical records from before the ALJ's decision, and there is no evidence of deterioration." *Blackwell v. Saul*, 2020 WL 5203992, *5 (N.D. Ala. Sept. 1, 2020) (citing *Washington*, 806 F.3d at 1322); *see also Ring v. Soc. Sec. Admin., Comm'r*, 728 Fed. Appx. 966, 968 (11th Cir. 2018). Additionally, evidence is "material, and thus warrants a remand,

if there is a reasonable possibility that the new evidence would change the administrative outcome." *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735, 745 (11th Cir. 2011).  If additional evidence is either immaterial or untimely, the Appeals Council may deny review and is not required to explain its decision to deny.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

Ms. Washington submitted to the Appeals Council six medical records from the Etowah Free Community Clinic regarding office visits from February 2018 through August 2018.  (Doc. 4-3, pp. 33-38).  These records indicate that Ms. Washington experienced "fatigue" and "lots of pain," including "neck pain, shoulder pain, [and] pain in knees."  (Doc. 4-3, pp. 33-38).  The records reflect diagnoses of rheumatoid arthritis and fibromyalgia.  (Doc. 4-3, pp. 33-38).  After accepting this new evidence, the Appeals Council denied review because that "evidence does not show a reasonable probability that it would change the outcome of the decision." (Doc. 4-3, p. 3).

The records relating to Ms. Washington's three office visits in February, March, and May of 2018 are timely because they predate the ALJ's decision.  (Doc. 4-3, pp. 33, 36-38).  The remaining records from office visits in June, July, and August postdate the ALJ's decision, but the records do appear to suggest that the physician assessed the same conditions discussed in the earlier records.

Still, these records are not material because there is not a reasonable probability that this evidence would change the ALJ's determination. These records indicate that Ms. Washington experienced pain, which already was established by other evidence in the record considered by the ALJ. (Doc. 4-7, p. 26; Doc. 4-10, p.6). Other medical records already considered by the ALJ reflected Ms. Washington's fibromyalgia diagnosis. (Doc. 4-10, p. 83; Doc. 4-11, pp. 10, 13, 20). The new evidence submitted by Ms. Washington is new only to the extent that there is an assessment of rheumatoid arthritis. (Doc. 4-3, pp. 33-38). As discussed in the previous section, the ALJ considered this assessment in determining Ms. Washington's RFC. This new evidence would not reasonably alter the ALJ's decision because the evidence is mostly duplicative of other medical records submitted to the ALJ. The Appeals Council did not err in denying review and was therefore not required to explain its rationale for denying review beyond explaining that the evidence would not have otherwise reversed the ALJ's determination.

### 2. Hypothetical Questioning to Vocational Expert

At the fifth stage of the disability framework, the ALJ bears the burden of demonstrating that sufficient jobs exist in the national economy that a plaintiff can perform, given her residual functional capacity. *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999). The ALJ can satisfy this burden by posing hypothetical questions that include the claimant's severe impairments to a vocational expert

("VE"). *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that an ALJ may omit non-severe impairments in her hypothetical questions to the VE). The ALJ need not include in the hypothetical question any elements or limitations that are not supported by the claimant's record. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

During the hearing, the ALJ asked the vocational expert to consider:

a hypothetical individual of the Claimant's age, education, and past work history who would be capable of work at the sedentary exertional level with the following limitations. She could occasionally climb ramps and stairs, stoop and crouch. Never ladders, ropes, or scaffolds. Nor could she kneel or crawl. She can only occasionally reach overhead with her bilateral upper extremities. . . She could frequently use her left upper extremity for handling and fingering.  She can only have occasional exposure to vibration as well as extremes of cold. No exposure to hazards such as unprotected heights and dangerous machinery. Can that individual perform any of the past jobs you've described?

(Doc. 4-3, p. 59).

The VE determined that the individual would not be able to return to work as a pharmacy technician or material handler—Ms. Washington's two previous jobs— but would be capable of performing sedentary, unskilled work as a bench and table worker, assembler, or surveillance system monitor.  (Doc. 4-3, pp. 59-60).

The ALJ followed up, asking:

> With respect to the reaching requirements that I indicated of only occasionally reaching overhead with the bilateral upper extremities, does the DOT specifically delineate between overhead reaching, reaching in front, reaching behind . . .?

(Doc. 4-3, p. 60). The VE responded that the "DOT does deal with reaching, but not that specific in terms of directions." (Doc. 4-3, p. 60). Finally, the ALJ asked:

> If I were to add another provision to the hypothetical that the individual would miss work more than two days per month on a regular basis would there be work in the national economy for that hypothetical individual?

(Doc. 4-3, p. 61). To which the VE responded, "[n]o, Your Honor." (Doc. 4-3, p. 61).

Ms. Washington argues that the ALJ did not meet the burden of showing sufficient numbers of jobs available because the ALJ failed to pose to the vocational expert questions that encompass the full range of Ms. Washington's impairments. Specifically, Ms. Washington contends that the ALJ failed to include that the hypothetical individual could never "reach overhead or *forward* with her left upper extremity." (Doc. 6, pp. 24-25) (emphasis added). Additionally, Ms. Washington argues that the ALJ should have conclusively determined that Ms. Washington was incapable of performing any work because the VE responded that an individual who "would miss more than two days per month on a regular basis" would be unable to work. (Doc. 6, pp. 24-25).

The ALJ did not err in failing to include the specific condition that the hypothetical individual could not reach forward with her upper left extremity. The ALJ did ask the VE here whether there was employment for an individual who had difficulty reaching overhead with upper bilateral extremities, and the VE explained that the DOT does not delineate between reaching overhead or forward. (Doc. 4-3, p. 61). The VE's answer suggests that the DOT guidelines consider difficulty in reaching in all directions as opposed to just reaching overhead. Even so, Ms. Washington does not provide evidence supporting her contention that if the ALJ had specifically asked about reaching forward, the VE would have changed his answer regarding available employment. Indeed, the fact that the DOT guidelines do not differentiate movement to that level of specificity indicates that the VE's answer to the ALJ's hypothetical question regarding reaching with the upper extremities likely would be the same.

As to the second limitation, there is no evidence in the record that Ms. Washington necessarily would need to miss work more than two days a month. While she testified that she does sleep often and that her medications make her drowsy, Ms. Washington did not testify that she is incapable of work more than two days a month, and her medical records do not support that conclusion. (Doc. 4-3, pp. 46, 51). The ALJ therefore could disregard that limitation in her determination. *See Crawford*, 363 F.3d at 1161. Accordingly, the ALJ included sufficient

information regarding Ms. Washington's severe impairments in her hypothetical questioning to the VE.

## V. CONCLUSION

For the reasons discussed above, the Court affirms the Commissioner's decision.

**DONE** and **ORDERED** this September 23, 2020.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE